1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  DANIEL N. KASSABIAN (CABN 215249)
   Special Assistant United States Attorney
5
        150 Almaden Boulevard, Suite 900
6       San Jose, California 95113
        Telephone: (408) 535-5051
7       FAX: (408) 535-5081
        daniel.kassabian@usdoj.gov
8
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 21-71467 MAG |
| Plaintiff, | MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR DETENTION |
| v. | |
| GLENDELIA FAZ, | |
| Defendant. | |

## I. SYNOPSIS

Defendant Glendelia Faz, along with her co-defendant Jorge Luis Solorio Mendoza, conspired to distribute over 900 grams (approximately 2 lbs.) of methamphetamine out of the La Estrella Market in San Jose from July 10, 2020 to October 15, 2020. Accordingly, a Criminal Complaint alleges a single count of 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii)—Conspiracy to Distribute And Possess with Intent to Distribute 50 grams and More of a Mixture and Substance Containing Methamphetamine.

The Government moves for pretrial detention. Ms. Faz cannot overcome the presumption in this case that no condition, or combination of conditions, exists that will reasonably assure the appearance of the person and safety of the community.

Ms. Faz is a danger to the community. The charge captures only a small part in Ms. Faz's

longstanding role of a major source of drugs to the community, undeterred by incarceration along the way. Now 55 years old, Ms. Faz has become a major player in the drug trade. When Ms. Faz was arrested on September 15, 2021, a search of La Estrella Market resulted in the seizure of one kilogram of suspected methamphetamine and several ziplock bags with white residue hidden in the building's ceiling tiles. Also, San Jose Grande gang members were observed obtaining ounces of methamphetamine from La Estrella Market in 2017. Ms. Faz has state convictions for drug sales and possession for sales in 2011 from an arrest in 2009. Per the police report for that case, she sold a quarter-pound methamphetamine from the same, La Estrella Market, where she had two firearms despite being a felon. Ms. Faz also has a state felony conviction for transportation of controlled substances for sales in 2003.

In addition, Ms. Faz is a flight risk. In conducting her drug sales, she has noted that she gets her supply directly from a drug cartel in Mexico. With a mandatory minimum of 5 years prison, she faces much more potential incarceration time in this case than before. For her prior state court drug sales convictions, she spent at most 2 years in local jail—and likely less due to early release programs—that counted as a 4-year prison sentence with good time credits.

There is no condition or combination of conditions that will reasonably assure the safety of the community or prevent Ms. Faz from fleeing prosecution. Ms. Faz cannot rebut the presumption and show otherwise. Accordingly, the Court should order Ms. Faz's pretrial detention.

## II. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Section 3142(e) contains a rebuttable presumption that applies here because (1) the indicted charge is contained in 21 U.S.C. §§ 801 *et seq*. and (2) the indicted charge has a maximum term of imprisonment of at least 10 years. Thus, it is presumed that no condition, or combination of conditions, exists that will reasonably assure the appearance of the person and safety of the community.

Certain charges require a detention hearing, when requested by the Government, to determine

whether any condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f). A case charging Possession with Intent To Distribute and Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)—which provides a maximum term of imprisonment of 40 years—requires a detention hearing when requested by the Government. 18 U.S.C. § 3142(f)(1)(C).

In evaluating whether a defendant should be detained pretrial, the court's finding that a defendant is a danger to the community must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f)(2)(B), and the court's finding that a defendant is a risk of non-appearance need only be supported by a preponderance of the evidence, *Motamedi*, 767 F.2d at 1406. "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside the articulated factors set forth in section 3142 is also disfavored. *Id*.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.     OFFENSE CONDUCT

On July 10, 2020, Ms. Faz sold 223.8 grams net (approximately a ½ lb.) of pure methamphetamine for $3,000 to a Confidential Source (CS) at La Estrella Market. At that sale, Ms. Faz claimed to know the "Valencia" drug cartel family in Michoacán, Mexico, and could supply whatever drug amount the CS desired.

On July 21, 2020, Ms. Faz sold 224.1 grams net (approximately another ½ lb.) of pure methamphetamine to the same CS for $2,800 at La Estrella Market with the assistance of her nephew,

U.S. MEMO ISO PRETRIAL DETENTION            3
CASE NO. CR 21-71467 MAG

co-defendant Solorio Mendoza.  At that time, Ms. Faz and Mr. Solorio Mendoza also indicated they could supply black tar heroin.

On August 31, 2020, Ms. Faz sold 224.1 grams net (approximately a ½ lb.) of pure methamphetamine to the CS for $2,400 at La Estrella Market.

On October 15, 2020, Ms. Faz sold 276.0 grams gross (approximately another ½ lb.) of a substance that tested presumptively positive for methamphetamine to the CS for $2,000 at La Estrella Market (lab results are pending).  Leading up to this transaction, Ms. Faz offered to sell a full pound of methamphetamine for $3,800.

In connection with her arrest for the conduct described above, Drug Enforcement Agency (DEA) agents executed search warrants at La Estrella Market and Ms. Faz's home in Gilroy, California.  The search of the market revealed 1 kilogram of methamphetamine in a safe.  Ms. Faz supplied law enforcement with the code to open the safe and stated that its contents belonged to her.  Multiple ziplock bags with white residue were also found in the building's ceiling tiles.

### III. CRIMINAL ACTIVITY AND HISTORY AND CHARACTERISTICS OF DEFENDANT

#### A. Selling Out Of La Estrella Market To The San Jose Grande Street Gang

The La Estrella Market, operated by Ms. Faz, has supplied methamphetamine for resale for members of San Jose Grande (SJG), a Norteño street gang formed in San Jose, California, in the 1990s, which is comprised of dozens of members operating primarily in and around San Jose.  SJG members commit a wide variety of crimes for the benefit of SJG, as well as for the benefit of Norteños and the Nuestra Familia criminal organization generally.  These crimes include, but are not limited to, murder, conspiracy to commit and attempted murder, robbery, obstruction of justice, witness intimidation, distribution of narcotics, and various firearms offenses. *See, e.g.*, No. CR-21-00312 EJD (indictment against six other SJG members alleging a pattern of racketeering activity consisting of offenses involving (1) the distribution of controlled substances, (2) acts involving robbery; and (3) acts involving murder).

In one example, SJG member Evan Kobayashi (indicted in No. CR 21-00344 BLF) arranged to sell 3 ounces of methamphetamine in 2017.  Federal Bureau of Investigation (FBI) agents observed him being dropped off at La Estrella Market to obtain the methamphetamine, and then returning from the

market a short time later with the methamphetamine in hand.

In another example, SJG member Charles Pineda (indicted in No. CR21-312 EJD) arranged to sell 3 ounces of methamphetamine in 2017. FBI agents observed him going into La Estrella Market and then driving back to his home to deliver the methamphetamine that he then sold.

### B. Witness Retaliation After Last State Court Conviction

The following information indicates that Ms. Faz engaged in witness intimidation following her last arrest. After the case agent spoke to pretrial services for purposes of the pre-bail report, the case agent spoke with an undercover San Jose Police Department (SJPD) officer who had bought methamphetamine from Ms. Faz during the investigation that led to her last conviction. The undercover officer informed the case agent that Ms. Faz sought to retaliate against him after her last arrest. More specifically, the undercover officer was told by a CS working with SJPD that Ms. Faz told the CS to "take care" of the undercover officer. When the CS declined, Ms. Faz told the CS that the officer had been "greenlit"—which in this context the officer understood meant that a hit had been put out on the officer. It is unclear whether Ms. Faz knew that undercover was, in fact, a police officer. It is also unclear whether she learned about his involvement through discovery received in the prosecution of her case. In any event, Ms. Faz's retaliation demonstrates that she is a danger in general, and especially to the CS witness in this case.

### C. 2011 State Court Convictions For Drug Sales

On May 5, 2009, Ms. Faz's husband sold to a SJPD undercover officer a ¼ pound of methamphetamine at Capitol Avenue and McKee Road in San Jose.

On May 12, 2009, the same undercover officer entered the La Estrella Market where Ms. Faz sold him another ¼ pound of methamphetamine.

On May 21, 2009, SJPD and DEA officers executed search warrants at La Estrella Market and Ms. Faz's and her husband's home in Gilroy, California. At La Estrella Market, officers discovered:

- over 2.5 ounces of methamphetamine,
- 6 grams of cocaine,
- over $8000 in cash,
- a pay-owe ledger,
- a digital scale,
- several empty plastic baggies with white residue,
- a .38 Smith & Wesson revolver,
- a .25 Raven Arms semi-automatic pistol with a loaded magazine, and

- .25 and .38 caliber ammunition.

During the search, Ms. Faz was Mirandized and interviewed. She initially explained that she was unaware of anything illegal in the market. She then stated that there were two handguns inside of a pink shoebox on the desk inside of the office. Ms. Faz explained that she had them for protection because the store had been robbed in the past. Ms. Faz, her husband, and another suspect present at the store were arrested and taken into custody.

On November 17, 2011, Ms. Faz was convicted for violations of Distribution of Methamphetamine (Cal. Health & Safety Code § 11379) and Possession of Cocaine for Sale (*id.* § 11351), both felonies. With enhancements for prior sale of controlled substances (*id.* § 11370.2(c)) and for committing a felony drug offense while armed (Cal. Penal Code § 12022(c)), she faced a maximum of 19 years in state prison. She was sentenced to 4 years prison and 3 years prison to run consecutive, respectively. Following her remand on January 6, 2012, the state court modified her sentence to allow for early release programs on August 28, 2012.

### D. 2003 State Court Conviction For Drug Possession With Intent to Sell

On July 7, 2003, Ms. Faz was arrested for a violation of Possessing Cocaine with Intent to Sell (Cal. Health & Safety Code § 11351). She was convicted of that charge on October 20, 2003, and sentenced to 8 months county jail, and 3 years probation.

## IV. SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

Under 18 U.S.C. § 3142(g)(1), the nature and circumstances of the charged offense weigh in favor of detention. Ms. Faz's conduct charged here is serious. She sold approximately 2 pounds / 900+ grams of pure methamphetamine, and another kilogram of methamphetamine was found in her possession at the time of her arrest. Her conduct is by no means a recent foray into the world of drug trafficking given documentation of, and convictions for, her drug sales in San Jose going back to 2003.

Under section 3142(g)(2), the weight of the evidence favors detention. Ms. Faz has been charged with violating 21 U.S.C. § 846, 841(a)(1) and (b)(1)(B)(viii) (imposing mandatory minimum sentence of five years and permitting statutory maximum sentence of 40 years), which results in a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e). Evidence of Ms. Faz's guilt and likely lengthy period of incarceration "makes it more likely that [s]he will flee," particularly in light of

the term of federal imprisonment that Ms. Faz potentially faces here. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). The fact that Ms. Faz has been previously convicted on similar state charges and received comparatively light sentences (i.e., a four-year prison term served in local jail with early release programs) amplifies the risk of flight here. In contrast, Ms. Faz now faces a five-year mandatory minimum and a forty-year maximum sentence in federal prison, and could be charged under 21 U.S.C. §§ 841(b)(1)(A) and 851 to face a 15-year mandatory minimum. Even if she were to receive a sentence at the bottom of the guidelines range (which is by no means a fait accompli given her conduct and criminal history), she would face over 10 years in custody, significantly more time than she has ever served before.

Under section 3142(g)(3) and (g)(4), Ms. Faz's history, her characteristics, and the nature and seriousness of the danger posed to the community and flight risk upon release favor detention. Of note, Ms. Faz's repeated drug dealing of multiple ounces and more, and prior possession of firearms in connection with her drug trafficking (and while a felon), support that conclusion. Ms. Faz also poses a serious flight risk given her ties to a Mexican cartel. Of greatest significance, there is evidence that Ms. Faz retaliated against a witness in connection with the last case against her in similar circumstances.

## V. CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion to detain Ms. Faz pending trial.

DATED: September 22, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

  /s/
DANIEL N. KASSABIAN
Special Assistant United States Attorney